FILED
CLERK, U.S. DISTRICT COURT

3/20/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_MMC\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 2:25-CR-00181-SB |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy to Operate an Illegal Money Transmitting Business; 18 U.S.C. § 982: Criminal Forfeiture] |
| JOSE SOMARRIBA, | |
| Defendant. | |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant JOSE SOMARRIBA was a citizen of the United States and resided in Los Angeles, California.

2. Co-Conspirator 1 was a citizen of the United States and resided in Los Angeles, California and Mexico City, Mexico.

3. Co-Conspirator 2 was a citizen of the People's Republic of China ("PRC") and resided in the United Arab Emirates.

4. Co-Conspirator 3 was a citizen of the PRC and St. Kitts and Nevis and resided in the Kingdom of Cambodia, the United Arab Emirates, and the PRC.

5. Axis Digital Limited ("Axis Digital") was an entity incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021.

6. "Bahamas Account #1" was an account at Deltec Bank and Trust Limited ("Deltec Bank") in the Bahamas, opened by Axis Digital on or about February 25, 2022.

7. B&C Commerce LLC ("B&C Commerce") was a shell company registered with the California Secretary of State on or about January 21, 2022, with a principal address in San Gabriel, California.

8. Jimei Trading Inc. ("Jimei Trading") was a shell company registered with the California Secretary of State on or about May 15, 2022, with a principal address in San Gabriel, California.

9. YXJ Trading Corporation ("YXJ Trading") was a shell company registered with the California Secretary of State on or about July 30, 2022, with a principal address in Monterey Park, California.

10. YYJ Consulting Corporation ("YYJ Consulting") was a shell company registered with the California Secretary of State on or about August 25, 2022, with a principal address in Monterey Park, California.

11. Sea Dragon Trading, LLC ("Sea Dragon Trading") was a shell company registered with the California Secretary of State on or about

1  September 8, 2022, with a principal address in Alhambra, California.

2  12.  SMX Beauty Inc. ("SMX Beauty") was a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California.

5  13.  SMX Travel Inc. ("SMX Travel") was a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California.

8  14.  Sea Dragon Remodel, Inc. ("Sea Dragon Remodel") was a shell company registered with the California Secretary of State on or about October 17, 2022, with a principal address in Vernon, California.

11  15.  The virtual-currency wallet address beginning with TRteo (the "TRteo Address") was a wallet that received transfers of virtual currency converted from funds in Bahamas Account #1.

B.  DEFINITIONS

16.  "Digital currency" or "virtual currency" is currency that exists only in digital form; it has some of the characteristics of traditional money, but it does not have a physical equivalent. Cryptocurrency, a type of virtual currency, is a network-based medium of value or exchange that may be used as a substitute for traditional currency to buy goods or services or exchanged for traditional currency or other cryptocurrencies.  USDT, or Tether, is a virtual currency whose value is pegged to the U.S. dollar.

17.  The term "spoofed" refers to domain spoofing, a process by which cybercriminals seek to persuade victims that a web address or email belongs to a legitimate and generally trusted company, when in fact it links the user to a fraudulent site controlled by a cybercriminal.

18.  In "pig butchering" fraud schemes (a term derived from a

foreign-language phrase used to describe these crimes), scammers encounter victims on dating services, social media, or through unsolicited messages or calls, often masquerading as a wrong number. Scammers initiate relationships with victims and slowly gain their trust, eventually introducing the idea of making a business investment using cryptocurrency. Victims are then directed to other members of the scheme operating fraudulent cryptocurrency investment platforms and applications, where victims are persuaded to make financial investments. Once funds are sent to scammer-controlled accounts, the investment platform often falsely shows significant gains on the purported investment, and the victims are thus induced to make additional investments. Ultimately, the victims are unable to withdraw or recover their money, often resulting in significant losses for the victims.

19. In "customer service" or "tech support" fraud schemes, victims are contacted by fake customer service or technology support representatives. Scammers often pretend to represent a prominent company and contact the victim to alert them to a supposed infection with a computer virus or false issue with the victim's computer or other digital device. Scammers then take a variety of actions to defraud the victim, including, but not limited to, the following: (a) causing the victim to provide them with remote access to the victim's digital devices to supposedly remediate the problem, (b) requesting that funds be transferred to pay for assistance, and (c) advising the victim to transfer money from accounts that are supposedly compromised by the problem to accounts controlled by the scammer.

C.   OBJECT OF THE CONSPIRACY

20. Beginning on an unknown date, but no later than on or about

4

November 2021, and continuing to in or about July 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant SOMARRIBA, with others known and unknown, knowingly conspired and agreed to commit an offense against the United States, namely, to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(b)(1)(B) and 1960(b)(1)(C).

D. THE MANNER AND MEANS OF THE CONSPIRACY

21. The object of the conspiracy was to be accomplished in substance as follows:

Solicitation of Investment Fraud Victims

a. Unindicted co-conspirators would contact victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services.

b. Unindicted co-conspirators would gain the trust of victims by establishing either professional or romantic relationships with the victims. Unindicted co-conspirators would build these relationships through interstate communications, including, but not limited to, electronic messages sent via end-to-end encrypted applications.

c. Unindicted co-conspirators would promote fraudulent cryptocurrency investments to the victims after gaining the victims' trust.

d. Unindicted co-conspirators would establish spoofed domains and websites that resembled legitimate cryptocurrency trading platforms.

e. In some executions of the scheme, unindicted co-conspirators would fraudulently induce victims into investing in

cryptocurrency through these fraudulent and spoofed investment platforms.

   f. In other executions of the scheme, unindicted co-conspirators would fraudulently induce victims into investing in cryptocurrency by sending funds via wire transfer.

   g. Unindicted co-conspirators would fraudulently represent to victims that the victims' investments were appreciating when, in fact, those funds had been converted by members of the fraud scheme.

  <u>Solicitation of Customer Service and Tech Support Fraud Victims</u>

   h. Unindicted co-conspirators would fraudulently represent to victims through interstate communications, including, but not limited to, electronic messages and phone calls, that they were from a customer service or technology support company.

   i. Unindicted co-conspirators would fraudulently induce victims to send funds via wire transfer or cryptocurrency trading platforms to purportedly remediate a non-existent virus or other false computer-related problem.

  <u>Operation of Unlicensed Money Transmitting Business</u>

   j. Co-conspirators would register dozens of U.S. shell companies with the California Secretary of State and elsewhere, including B&C Commerce, Jimei Trading, YXJ Trading, YYJ Consulting, SMX Beauty, SMX Travel, Sea Dragon Trading, and Sea Dragon Remodel.

   k. Co-conspirators would open bank accounts in the names of various shell companies.

   l. Co-conspirators would receive victim funds in U.S. bank accounts established on behalf of shell companies and cause the further transfer of victim funds to domestic and international bank

accounts.

m.  Defendant SOMARRIBA and co-conspirators would monitor the receipt and execution of interstate and international wire transfers of victim funds, including to Bahamas Account #1.

n.  Defendant SOMARRIBA and other co-conspirators would monitor the conversion of victim funds to USDT and the subsequent distribution of virtual currency to cryptocurrency wallets.

o.  Defendant SOMARRIBA and co-conspirators would direct the conversion of nearly all of the funds into USDT and the subsequent transfer of cryptocurrency to the TRteo Address.

p.  Defendant SOMARRIBA would receive a commission for the transfer of victim funds to USDT and would distribute ledgers detailing the profit-sharing arrangement.

q.  Defendant SOMARRIBA and other co-conspirators would possess fraudulent "Know Your Customer" ("KYC") documents associated with these wire transfers.

r.  Co-conspirators would cause wire transfers to be sent through various intermediary bank accounts before reaching their final beneficiary.

s.  Defendant SOMARRIBA would receive victim funds in financial accounts he directly controlled.

t.  Defendant SOMARRIBA and other co-conspirators would communicate with each other and coordinate acts in furtherance of the conspiracy through encrypted messaging services.

E.  OVERT ACTS

22.  In furtherance of the conspiracy and to accomplish its object, defendant SOMARRIBA, Co-Conspirators 1, 2, and 3, and others known and unknown, on or about the dates set forth below, committed

and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1</u>:  On November 30, 2021, defendant SOMARRIBA, Co-Conspirator 1, and other co-conspirators established the Bahamian entity Axis Digital.

<u>Overt Act No. 2</u>:  On February 9, 2022, defendant SOMARRIBA corresponded with a Deltec Bank employee concerning the account opening forms for Bahamas Account #1.

<u>Overt Act No. 3</u>:  On June 15, 2022, defendant SOMARRIBA sent Deltec Bank a screenshot of a cryptocurrency account held by defendant SOMARRIBA to demonstrate proof of funds for the opening of Bahamas Account #1.

<u>Overt Act No. 4</u>:  On July 6, 2022, defendant SOMARRIBA traveled to Phnom Penh, Cambodia, to meet with co-conspirators regarding the operation of Bahamas Account #1 and the transfer of USDT to the TRTeo Address.

<u>Overt Act No. 5</u>:  On August 5, 2022, defendant SOMARRIBA corresponded with Deltec Bank employees on an encrypted messaging platform and directed that for future transactions funds from Bahamas Account #1 should be converted to USDT and transferred to the TRteo Address.

<u>Overt Act No. 6</u>:  On September 13, 2022, defendant SOMARRIBA sent Co-Conspirator 1 a blank Digital Transaction Agreement to use as a contract template for shell companies to exchange U.S. dollars into USDT.

//
//

<u>Overt Act No. 7</u>:   On September 15, 2022, defendant SOMARRIBA sent Deltec Bank a purportedly executed and signed Digital Transaction Agreement for the exchange of U.S. dollars into USDT to be transferred to the TRteo Address.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of defendant's conviction of the offense set forth in this Information.

2. Defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

JOSEPH T. MCNALLY
Acting United States Attorney

*/s/ David T. Ryan*

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual Property Crimes Section

MAXWELL COLL
ALEXANDER S. GORIN
Assistant United States Attorneys
Cyber & Intellectual Property Crimes Section

NISHA CHANDRAN
Assistant United States Attorney
Corporate and Securities Strike Force

STEFANIE SCHWARTZ
TAMARA LIVSHIZ
Trial Attorneys
National Cryptocurrency Enforcement Team
Computer Crime & Intellectual Property Section