JOSEPH T. MCNALLY
Acting United States Attorney
DAVID T. RYAN
Chief, National Security Division
MAXWELL COLL (Cal. Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
Cyber & Intellectual Property Crimes Section
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Corporate and Securities Fraud Strike Force
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-1785/3190/2429
     Facsimile:  (213) 894-0141
     E-mail:     maxwell.coll@usdoj.gov
                 alexander.gorin@usdoj.gov
                 nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
                        FILED
               CLERK, U.S. DISTRICT COURT

                   3/20/2025

             CENTRAL DISTRICT OF CALIFORNIA
             BY:       MMC        DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>JOSE SOMARRIBA,<br><br>          Defendant. | No. CR  2:25-CR-00181-SB<br><br>PLEA AGREEMENT FOR DEFENDANT<br>JOSE SOMARRIBA |

     1.   This constitutes the plea agreement between JOSE SOMARRIBA
("defendant") and the United States Attorney's Office for the Central
District of California (the "USAO") and the United States Department
of Justice, Computer Crime and Intellectual Property Section ("CCIPS"
and together with the USAO, the "United States") in the above-
captioned case.  This agreement is limited to the USAO and CCIPS and

cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and CCIPS and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit B or a substantially similar form, which charges defendant with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371, to wit, operation of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(b)(1)(B) and 1960(b)(1)(C).

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the United States and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the United States to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the United States inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE UNITED STATES' OBLIGATIONS</u>

3.   The United States agrees to:

a.   Not contest the Factual Basis agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in the single-count Information, that is, conspiracy to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 371, the following must be true:  (1) there was an agreement between two or more persons to commit at least one crime as charged in the information, to wit: operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960(a), (b)(1)(B), and (b)(1)(C); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5.    Defendant understands that for defendant to be guilty of the objects of the conspiracy, that is, operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960(a), (b)(1)(B), and (b)(1)(C), the following must be true: (1) defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business affecting interstate or foreign commerce; and (2) the

4

business was unlicensed in that it failed to comply with the money transmitting business regulation requirements under Title 31, United States Code, Section 5330 and the regulations promulgated under that section; or otherwise involved the transportation or transmission of funds that were known to the defendant to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity.  A money transmitting business transfers funds on behalf of the public by any and all means including but not limited to transfers within the United States or to locations abroad by wire, check, draft, facsimile, or courier.  A defendant does not need specific knowledge of the registration requirements to violate Title 18, United States Code, Section 1960.

<u>PENALTIES AND RESTITUTION</u>

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

5

suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties agree that the applicable amount of restitution is at least $36,905,259.  The parties agree that the amount of restitution could change based on facts that come to the attention of the parties prior to sentencing.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO and CCIPS agree to the Factual Basis provided in Exhibit A hereto and agree that this Factual Basis is sufficient to support pleas of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1                              SENTENCING FACTORS

2          12.  Defendant understands that in determining defendant's

3     sentence the Court is required to calculate the applicable Sentencing

4     Guidelines range and to consider that range, possible departures

5     under the Sentencing Guidelines, and the other sentencing factors set

6     forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7     Sentencing Guidelines are advisory only, that defendant cannot have

8     any expectation of receiving a sentence within the calculated

9     Sentencing Guidelines range, and that after considering the

10    Sentencing Guidelines and the other § 3553(a) factors, the Court will

11    be free to exercise its discretion to impose any sentence it finds

12    appropriate up to the maximum set by statute for the crime of

13    conviction.

14         13.  Defendant and the United States agree to the following

15    applicable Sentencing Guidelines factors:

16    Base Offense Level:              8          U.S.S.G. § 2S1.1(a)(2)
17                                                U.S.S.G. § 2X1.1(a)

18    Laundered Funds More Than        +22    U.S.S.G. § 2B1.1(b)(1)(L)
19    $25,000,000

20    Business of Laundering Funds     +4     U.S.S.G. § 2S1.1(b)(2)(C)

21

22    Defendant and the United States reserve the right to argue that

23    additional specific offense characteristics, adjustments, and

24    departures under the Sentencing Guidelines are appropriate.

25         14.  Defendant understands that there is no agreement as to

26    defendant's criminal history or criminal history category.

27         15.  Defendant and the United States reserve the right to argue

28    for a sentence outside the sentencing range established by the

                                      8

Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

## WAIVER OF RETURN OF DIGITAL DATA

2       17.   Understanding that the government has in its possession

3    digital devices and/or digital media seized from defendant, defendant

4    waives any right to the return of digital data contained on those

5    digital devices and/or digital media and agrees that if any of these

6    digital devices and/or digital media are returned to defendant, the

7    government may delete all digital data from those digital devices

8    and/or digital media before they are returned to defendant.

9

## WAIVER OF VENUE

10       18.   Having been fully advised by defendant's attorney regarding

11   the requirements of venue with respect to the offense to which

12   defendant is pleading guilty, to the extent the offense to which

13   defendant is pleading guilty were committed, begun, or completed

14   outside the Central District of California, defendant knowingly,

15   voluntarily, and intelligently waives, relinquishes, and gives up:

16   (a) any right that defendant might have to be prosecuted only in the

17   district where the offense to which defendant is pleading guilty were

18   committed, begun, or completed; and (b) any defense, claim, or

19   argument defendant could raise or assert based upon lack of venue

20   with respect to the offense to which defendant is pleading guilty.

21

## WAIVER OF APPEAL OF CONVICTION

22       19.   Defendant understands that, with the exception of an appeal

23   based on a claim that defendant's guilty plea was involuntary, by

24   pleading guilty defendant is waiving and giving up any right to

25   appeal defendant's conviction on the offense to which defendant is

26   pleading guilty.  Defendant understands that this waiver includes,

27   but is not limited to, arguments that the statute to which defendant

28   is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

20. Defendant agrees that, provided the Court imposes a total term of imprisonment of no more than 60 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21. The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 60 months, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $36,905,259.

22. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including

any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

RESULT OF WITHDRAWAL OF GUILTY PLEA

23.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement; and (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1

EFFECTIVE DATE OF AGREEMENT

2     24.  This agreement is effective upon signature and execution of

3 all required certifications by defendant, defendant's counsel, and an

4 Assistant United States Attorney.

5

BREACH OF AGREEMENT

6     25.  Defendant agrees that if defendant, at any time after the

7 signature of this agreement and execution of all required

8 certifications by defendant, defendant's counsel, and an Assistant

9 United States Attorney, knowingly violates or fails to perform any of

10 defendant's obligations under this agreement ("a breach"), the United

11 States may declare this agreement breached.  All of defendant's

12 obligations are material, a single breach of this agreement is

13 sufficient for the United States to declare a breach, and defendant

14 shall not be deemed to have cured a breach without the express

15 agreement of the United States in writing.  If the United States

16 declares this agreement breached, and the Court finds such a breach

17 to have occurred, then: (a) if defendant has previously entered a

18 guilty plea pursuant to this agreement, defendant will not be able to

19 withdraw the guilty plea, and (b) the United States will be relieved

20 of all its obligations under this agreement.

21     26.  Following the Court's finding of a knowing breach of this

22 agreement by defendant, should the United States choose to pursue any

23 charge that was either dismissed or not filed as a result of this

24 agreement, then:

25         a.  Defendant agrees that any applicable statute of

26 limitations is tolled between the date of defendant's signing of this

27 agreement and the filing commencing any such action.

28

13

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

27.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.  Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and

14

determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.
//

1     PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          31.   The parties agree that this agreement will be considered

3     part of the record of defendant's guilty plea hearing as if the

4     entire agreement had been read into the record of the proceeding.

5     AGREED AND ACCEPTED

6     UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
7     CALIFORNIA

8     JOSEPH T. MCNALLY
      Acting United States Attorney
9

10    _____          3/14/2025
      MAXWELL COLL                                Date
11    NISHA CHANDRAN
      ALEXANDER S. GORIN
12    Assistant United States Attorneys

13    STEFANIE SCHWARTZ
      TAMARA LIVSHIZ
14    Trial Attorneys
      Criminal Division, Computer Crime
15    and Intellectual Property Section

16

17    _____          3/14/25
      JOSE SOMARRIBA                              Date
18    Defendant

19

20    _____          3-14-25
      STEPHEN G. FRYE                             Date
21    Attorney for Defendant JOSE
      SOMARRIBA
22

23

24

25

26

27

28

                              16

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

JOSE SOMARRIBA
Defendant

Date 3/14/25

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JOSE SOMARRIBA'S attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        3-14-25
STEPHEN G. FRYE                         Date
Attorney for Defendant JOSE
SOMARRIBA

18

**EXHIBIT A**

FACTUAL BASIS

1.    Beginning from at least November 2021, and continuing through at least July 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly conspired with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others, to operate an unlicensed money transmitting business. Defendant participated in and knew of the agreement to operate an unlicensed money transmitting business and intended to help accomplish the objects of the conspiracy.  The unlicensed money transmitting business received millions of dollars in victim funds from U.S. persons targeted in cryptocurrency investment scams, also known as "pig butchering scams," and other related schemes. Defendant's unlicensed money transmitting business converted virtually all of the victim proceeds to the cryptocurrency Tether (or USDT) for a commission.  After converting the proceeds, the unlicensed money transmitting business facilitated the transfer of the USDT to a cryptocurrency wallet controlled by individuals in Cambodia.

**I.    Defendant Sets Up Axis Digital and Opens Account at Deltec Bank**

2.    Defendant conspired to operate Axis Digital Limited ("Axis Digital"), an entity that he incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021.  Using the Axis Digital business entity, defendant and Co-Conspirator 1 opened a bank account ("Bahamas Account #1") with the Bahamian financial institution Deltec Bank.  Before opening Bahamas Account #1, defendant and Co-Conspirator 1 traveled to the Bahamas to meet with Deltec Bank employees and discussed a money transmitting business

whereby defendant and his co-conspirators would convert U.S. dollars into USDT for a commission.

3.    Defendant worked with Co-Conspirator 1 to set up the Axis Digital business entity in the Bahamas and met with Deltec Bank employees on multiple occasions to facilitate the creation of Bahamas Account #1.

**II.  Defendant Facilitated the Transfer of Funds Required to Open Bahamas Account #1**

4.    After setting up the Axis Digital business entity and Bahamas Account #1, defendant, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others conspired to transfer roughly $1 million to defendant's cryptocurrency account to demonstrate a proof of funds to Deltec Bank.  The proof of funds was required for Deltec Bank to allow wire transfers into Bahamas Account #1 from other financial institutions.

5.    On or around June 8, 2022, Co-Conspirator 1 introduced defendant, Co-Conspirator 2, and Co-Conspirator 3 to each other on an encrypted messaging platform and participated in discussions about the transfer of roughly $1 million in cryptocurrency to defendant. Defendant also participated in discussions about Co-Conspirator 1 returning the roughly $1 million in cryptocurrency to the co-conspirators after sending a proof of funds to Deltec Bank. Defendant in fact received the $1 million from co-conspirators and sent a proof of funds to Deltec Bank, which enabled Axis Digital to begin receiving wires from other financial institutions.

**III. Defendant Traveled to Cambodia to Discuss the Transfers of Cryptocurrency to Individuals Involved in Scam Centers**

6.    In July 2022, after opening Bahamas Account #1, but before funds transferred into Bahamas Account #1 from victims in the United States, defendant, Co-Conspirator 1, and Co-Conspirator 2 traveled to Phnom Penh, Cambodia, to meet with Co-Conspirator 3 and other co-conspirators based in Cambodia and elsewhere.  During the trip to Cambodia, defendant was present while several co-conspirators discussed in Mandarin the transfer of money from U.S. bank accounts to Bahamas Account #1, and the subsequent conversion of those funds to USDT for a commission.  Co-conspirators also discussed the transfer of USDT from Bahamas Account #1 to a cryptocurrency wallet that co-conspirators in Cambodia controlled.

7.    During the July 2022 trip to Cambodia, defendant and co-conspirators traveled within the greater Phnom Penh region to at least one compound wherein co-conspirators conducted cryptocurrency investment scams, also known as "pig butchering scams."  Defendant later came to understand that funds flowing from U.S. financial institutions to the Axis Digital bank account in the Bahamas included money from victims of these cryptocurrency scams.

**IV. Axis Digital Limited Received More Than $36 Million From U.S. Bank Accounts Opened in the Names of U.S. Shell Companies**

8.    Between June 2022 and July 2023, the Axis Digital bank account received at least approximately $36,905,259 from U.S. bank accounts set up in the names of U.S. shell companies.  Each of the shell companies received these funds from U.S. victims of cryptocurrency investment scams or related schemes.  This includes the following shell entities:

1            a.    B&C Commerce LLC, a shell company registered with the
2    California Secretary of State on or about January 21, 2022, with a
3    principal address in San Gabriel, California;

4            b.    Jimei Trading Inc., a shell company registered with
5    the California Secretary of State on or about May 15, 2022, with a
6    principal address in San Gabriel, California;

7            c.    YXJ Trading Corporation, a shell company registered
8    with the California Secretary of State on or about July 30, 2022,
9    with a principal address in Monterey Park, California;

10           d.    YYJ Consulting Corporation, a shell company registered
11    with the California Secretary of State on or about August 25, 2022,
12    with a principal address in Monterey Park, California;

13           e.    Sea Dragon Trading, LLC, a shell company registered
14    with the California Secretary of State on or about September 8, 2022,
15    with a principal address in Alhambra, California;

16           f.    SMX Beauty Inc., a shell company registered with the
17    California Secretary of State on or about October 13, 2022, with a
18    principal address in Monterey Park, California;

19           g.    SMX Travel Inc., a shell company registered with the
20    California Secretary of State on or about October 13, 2022, with a
21    principal address in Monterey Park, California; and

22           h.    Sea Dragon Remodel, Inc., a shell company registered
23    with the California Secretary of State on or about October 17, 2022,
24    with a principal address in Vernon, California.

25    9.    Defendant and his co-conspirators created so-called digital
26    transaction agreements and "Know Your Customer" or "KYC" forms
27    associated with the U.S. shell companies, including those listed in
28    Paragraph 8, detailing the conversion of millions of dollars to USDT.

The agreements each listed Axis Digital as the business entity conducting the conversion of funds.  The agreements each listed the same cryptocurrency address beginning with TRteo (the "TRteo Address") as the receiving wallet.  Defendant knew the KYC forms for the shell companies and related wire transfers did not reflect legitimate business transfers.

**V.   Defendant Directed the Transfer of Funds to a Cryptocurrency Wallet Controlled by Co-Conspirators in Cambodia**

10.  When the U.S. bank accounts set up in the names of shell companies transferred victim funds to Bahamas Account #1, defendant and his co-conspirators directed Deltec Bank employees to convert the funds into USDT and to transfer the funds to the TRteo Address. Defendant directly messaged with Deltec Bank employees to coordinate these conversions and money transfers.  Defendant and his co-conspirators converted all of the funds in Bahamas Account #1 – more than $36 million – to USDT.  Defendant and his co-conspirators then directed the transfer of all of the funds to the TRteo Address.

11.  Defendant earned a commission on wire transfers into Bahamas Account #1 or the subsequent transfer of USDT to the TRteo Address. Defendant received ledgers from co-conspirators detailing the commissions he earned on wire transfers.

12.  Defendant agrees that Axis Digital laundered at least $36,905,259 in funds from U.S. shell companies.

**VI.  Defendant Did Not Comply With Money Transmitting Business Regulations and Knew the Source of Funds Derived from a Criminal Offense**

13.  Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of the Axis Digital money transmitting business, which affected interstate and foreign

23

commerce.    The Axis Digital business was unlicensed in that it failed
to comply with the money transmitting business regulation
requirements under 31 U.S.C. § 5330 and the regulations promulgated
under that section.    Defendant came to understand that at least a
portion of the funds flowing into Bahamas Account #1 were derived
from a criminal offense or were otherwise intended to be used to
promote or support unlawful activity.

**EXHIBIT B**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. |
|       Plaintiff, | I N F O R M A T I O N |
|       v. | [18 U.S.C. § 371: Conspiracy to Operate an Illegal Money Transmitting Business; |
| JOSE SOMARRIBA, | 18 U.S.C. § 982: Criminal Forfeiture] |
|       Defendant. | |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant JOSE SOMARRIBA was a citizen of the United States and resided in Los Angeles, California.

2.    Co-Conspirator 1 was a citizen of the United States and resided in Los Angeles, California and Mexico City, Mexico.

3.    Co-Conspirator 2 was a citizen of the People's Republic of China ("PRC") and resided in the United Arab Emirates.

4.    Co-Conspirator 3 was a citizen of the PRC and St. Kitts and Nevis and resided in the Kingdom of Cambodia, the United Arab Emirates, and the PRC.

5.    Axis Digital Limited ("Axis Digital") was an entity incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021.

6.    "Bahamas Account #1" was an account at Deltec Bank and Trust Limited ("Deltec Bank") in the Bahamas, opened by Axis Digital on or about February 25, 2022.

7.    B&C Commerce LLC ("B&C Commerce") was a shell company registered with the California Secretary of State on or about January 21, 2022, with a principal address in San Gabriel, California.

8.    Jimei Trading Inc. ("Jimei Trading") was a shell company registered with the California Secretary of State on or about May 15, 2022, with a principal address in San Gabriel, California.

9.    YXJ Trading Corporation ("YXJ Trading") was a shell company registered with the California Secretary of State on or about July 30, 2022, with a principal address in Monterey Park, California.

10.    YYJ Consulting Corporation ("YYJ Consulting") was a shell company registered with the California Secretary of State on or about August 25, 2022, with a principal address in Monterey Park, California.

11.    Sea Dragon Trading, LLC ("Sea Dragon Trading") was a shell company registered with the California Secretary of State on or about

2

1  September 8, 2022, with a principal address in Alhambra, California.

2      12.  SMX Beauty Inc. ("SMX Beauty") was a shell company

3  registered with the California Secretary of State on or about October

4  13, 2022, with a principal address in Monterey Park, California.

5      13.  SMX Travel Inc. ("SMX Travel") was a shell company

6  registered with the California Secretary of State on or about October

7  13, 2022, with a principal address in Monterey Park, California.

8      14.  Sea Dragon Remodel, Inc. ("Sea Dragon Remodel") was a shell

9  company registered with the California Secretary of State on or about

10 October 17, 2022, with a principal address in Vernon, California.

11     15.  The virtual-currency wallet address beginning with TRteo

12 (the "TRteo Address") was a wallet that received transfers of virtual

13 currency converted from funds in Bahamas Account #1.

14 B.  <u>DEFINITIONS</u>

15     16.  "Digital currency" or "virtual currency" is currency that

16 exists only in digital form; it has some of the characteristics of

17 traditional money, but it does not have a physical equivalent.

18 Cryptocurrency, a type of virtual currency, is a network-based medium

19 of value or exchange that may be used as a substitute for traditional

20 currency to buy goods or services or exchanged for traditional

21 currency or other cryptocurrencies.  USDT, or Tether, is a virtual

22 currency whose value is pegged to the U.S. dollar.

23     17.  The term "spoofed" refers to domain spoofing, a process by

24 which cybercriminals seek to persuade victims that a web address or

25 email belongs to a legitimate and generally trusted company, when in

26 fact it links the user to a fraudulent site controlled by a

27 cybercriminal.

28     18.  In "pig butchering" fraud schemes (a term derived from a

3

foreign-language phrase used to describe these crimes), scammers encounter victims on dating services, social media, or through unsolicited messages or calls, often masquerading as a wrong number. Scammers initiate relationships with victims and slowly gain their trust, eventually introducing the idea of making a business investment using cryptocurrency.  Victims are then directed to other members of the scheme operating fraudulent cryptocurrency investment platforms and applications, where victims are persuaded to make financial investments.  Once funds are sent to scammer-controlled accounts, the investment platform often falsely shows significant gains on the purported investment, and the victims are thus induced to make additional investments.  Ultimately, the victims are unable to withdraw or recover their money, often resulting in significant losses for the victims.

19.  In "customer service" or "tech support" fraud schemes, victims are contacted by fake customer service or technology support representatives.  Scammers often pretend to represent a prominent company and contact the victim to alert them to a supposed infection with a computer virus or false issue with the victim's computer or other digital device.  Scammers then take a variety of actions to defraud the victim, including, but not limited to, the following: (a) causing the victim to provide them with remote access to the victim's digital devices to supposedly remediate the problem, (b) requesting that funds be transferred to pay for assistance, and (c) advising the victim to transfer money from accounts that are supposedly compromised by the problem to accounts controlled by the scammer.

C.   OBJECT OF THE CONSPIRACY

20.  Beginning on an unknown date, but no later than on or about

4

November 2021, and continuing to in or about July 2023, in Los
Angeles County, within the Central District of California, and
elsewhere, defendant SOMARRIBA, with others known and unknown,
knowingly conspired and agreed to commit an offense against the
United States, namely, to operate an unlicensed money transmitting
business, in violation of 18 U.S.C. §§ 1960(b)(1)(B) and
1960(b)(1)(C).

D.    THE MANNER AND MEANS OF THE CONSPIRACY

21.    The object of the conspiracy was to be accomplished in
substance as follows:

Solicitation of Investment Fraud Victims

a.    Unindicted co-conspirators would contact victims
directly through unsolicited social-media interactions, telephone
calls and messages, and online dating services.

b.    Unindicted co-conspirators would gain the trust of
victims by establishing either professional or romantic relationships
with the victims.  Unindicted co-conspirators would build these
relationships through interstate communications, including, but not
limited to, electronic messages sent via end-to-end encrypted
applications.

c.    Unindicted co-conspirators would promote fraudulent
cryptocurrency investments to the victims after gaining the victims'
trust.

d.    Unindicted co-conspirators would establish spoofed
domains and websites that resembled legitimate cryptocurrency trading
platforms.

e.    In some executions of the scheme, unindicted co-
conspirators would fraudulently induce victims into investing in

cryptocurrency through these fraudulent and spoofed investment platforms.

   f. In other executions of the scheme, unindicted co-conspirators would fraudulently induce victims into investing in cryptocurrency by sending funds via wire transfer.

   g. Unindicted co-conspirators would fraudulently represent to victims that the victims' investments were appreciating when, in fact, those funds had been converted by members of the fraud scheme.

  Solicitation of Customer Service and Tech Support Fraud Victims

   h. Unindicted co-conspirators would fraudulently represent to victims through interstate communications, including, but not limited to, electronic messages and phone calls, that they were from a customer service or technology support company.

   i. Unindicted co-conspirators would fraudulently induce victims to send funds via wire transfer or cryptocurrency trading platforms to purportedly remediate a non-existent virus or other false computer-related problem.

  Operation of Unlicensed Money Transmitting Business

   j. Co-conspirators would register dozens of U.S. shell companies with the California Secretary of State and elsewhere, including B&C Commerce, Jimei Trading, YXJ Trading, YYJ Consulting, SMX Beauty, SMX Travel, Sea Dragon Trading, and Sea Dragon Remodel.

   k. Co-conspirators would open bank accounts in the names of various shell companies.

   l. Co-conspirators would receive victim funds in U.S. bank accounts established on behalf of shell companies and cause the further transfer of victim funds to domestic and international bank

6

1  accounts.

2       m.   Defendant SOMARRIBA and co-conspirators would monitor

3  the receipt and execution of interstate and international wire

4  transfers of victim funds, including to Bahamas Account #1.

5       n.   Defendant SOMARRIBA and other co-conspirators would

6  monitor the conversion of victim funds to USDT and the subsequent

7  distribution of virtual currency to cryptocurrency wallets.

8       o.   Defendant SOMARRIBA and co-conspirators would direct

9  the conversion of nearly all of the funds into USDT and the

10  subsequent transfer of cryptocurrency to the TRteo Address.

11       p.   Defendant SOMARRIBA would receive a commission for the

12  transfer of victim funds to USDT and would distribute ledgers

13  detailing the profit-sharing arrangement.

14       q.   Defendant SOMARRIBA and other co-conspirators would

15  possess fraudulent "Know Your Customer" ("KYC") documents associated

16  with these wire transfers.

17       r.   Co-conspirators would cause wire transfers to be sent

18  through various intermediary bank accounts before reaching their

19  final beneficiary.

20       s.   Defendant SOMARRIBA would receive victim funds in

21  financial accounts he directly controlled.

22       t.   Defendant SOMARRIBA and other co-conspirators would

23  communicate with each other and coordinate acts in furtherance of the

24  conspiracy through encrypted messaging services.

25  E.   OVERT ACTS

26       22.   In furtherance of the conspiracy and to accomplish its

27  object, defendant SOMARRIBA, Co-Conspirators 1, 2, and 3, and others

28  known and unknown, on or about the dates set forth below, committed

and caused to be committed various overt acts, in the Central
District of California and elsewhere, including, but not limited to,
the following:

Overt Act No. 1:    On November 30, 2021, defendant SOMARRIBA,
Co-Conspirator 1, and other co-conspirators established the Bahamian
entity Axis Digital.

Overt Act No. 2:    On February 9, 2022, defendant SOMARRIBA
corresponded with a Deltec Bank employee concerning the account
opening forms for Bahamas Account #1.

Overt Act No. 3:    On June 15, 2022, defendant SOMARRIBA sent
Deltec Bank a screenshot of a cryptocurrency account held by
defendant SOMARRIBA to demonstrate proof of funds for the opening of
Bahamas Account #1.

Overt Act No. 4:    On July 6, 2022, defendant SOMARRIBA
traveled to Phnom Penh, Cambodia, to meet with co-conspirators
regarding the operation of Bahamas Account #1 and the transfer of
USDT to the TRTeo Address.

Overt Act No. 5:    On August 5, 2022, defendant SOMARRIBA
corresponded with Deltec Bank employees on an encrypted messaging
platform and directed that for future transactions funds from Bahamas
Account #1 should be converted to USDT and transferred to the TRteo
Address.

Overt Act No. 6:    On September 13, 2022, defendant SOMARRIBA
sent Co-Conspirator 1 a blank Digital Transaction Agreement to use as
a contract template for shell companies to exchange U.S. dollars into
USDT.

//

//

<u>Overt Act No. 7:</u>   On September 15, 2022, defendant SOMARRIBA sent Deltec Bank a purportedly executed and signed Digital Transaction Agreement for the exchange of U.S. dollars into USDT to be transferred to the TRteo Address.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of defendant's conviction of the offense set forth in this Information.

2. Defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

//

10

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3                                   JOSEPH T. MCNALLY
                                    Acting United States Attorney
4

5

6
                                    DAVID T. RYAN
7                                   Assistant United States Attorney
                                    Chief, National Security Division
8
                                    KHALDOUN SHOBAKI
9                                   Assistant United States Attorney
                                    Chief, Cyber & Intellectual Property
10                                  Crimes Section

11                                  MAXWELL COLL
                                    ALEXANDER S. GORIN
12                                  Assistant United States Attorneys
                                    Cyber & Intellectual Property Crimes
13                                  Section

14                                  NISHA CHANDRAN
                                    Assistant United States Attorney
15                                  Corporate and Securities Strike
                                    Force
16
                                    STEFANIE SCHWARTZ
17                                  TAMARA LIVSHIZ
                                    Trial Attorneys
18                                  National Cryptocurrency Enforcement
                                    Team
19                                  Computer Crime & Intellectual
                                    Property Section
20

21

22

23

24

25

26

27

28

                                    11